**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY CHUNG, <br><br>        Plaintiff, <br><br>  v. <br><br> VAPOROUS TECHNOLOGIES, LLC; <br> CHRISTIAN RADO, <br><br>        Defendants. | 2:16-cv-08586-RSWL-PLA <br><br> **ORDER re: CLAIM CONSTRUCTION OF DISPUTED TERM** |

On January 23, 2018, this Court held a <u>Markman</u> Hearing to hear oral arguments regarding the proposed claim construction of the term "water chamber" contained in United States Patent No. 9,380,812 ("'812 Patent"). The Court, having reviewed all papers and arguments submitted pertaining to the disputed claim construction, **NOW FINDS AND RULES AS FOLLOWS:** the term "water chamber" shall be construed as a chamber for holding water and not other liquids.

///

///

1

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Henry Chung ("Plaintiff") brought this Action against Defendants Vaporous Technologies, LLC ("VTL") and Christian Rado ("Rado") (collectively, "Defendants") for patent infringement. Plaintiff alleges Defendants infringed upon Plaintiff's valid and enforceable patent, the '812 Patent. Plaintiff is an individual residing in Los Angeles, California, who is in the business of making, selling, marketing, and distributing vaporizer products. Compl. ¶¶ 1, 8, ECF No. 1. Plaintiff runs his vaporizer business under his corporate entity, Esquire Distribution Inc. Id. ¶ 9. VTL is a Pennsylvania limited liability company, and Defendant Christian Rado ("Rado") is the managing member of VTL. Id. ¶¶ 2-3.

In early 2014, Plaintiff came up with the design for an electronic cigarette with a wet scrubbing section capable of removing particles from the vapor. Id. ¶ 10. Plaintiff filed an application with the United States Patent and Trademark Office ("PTO") on March 11, 2014 and a second application on April 2, 2014. Id. The PTO issued the '812 Patent, entitled "Wet Scrubbing Electronic Cigarette," on July 5, 2016. Id., Ex. A ("'812 Patent").

The Wet Scrubbing Electronic Cigarette contains an atomizer heating section that heats nicotine fluid. Id. at 3:26-29. The vapor that results from heating

the nicotine fluid flows to the water chamber. Id. at
3:29-30. After the vapor enters the water chamber,
"the water chamber provides for scrubbing of incoming
airflow." Id. at 5:11-12. The air "bubbles are
cleaned and cooled so that the flow of a cooled and
cleaned vapor can continue . . . through the mouthpiece
to the user." Id. at 4:57-61.

 Plaintiff alleges that three of Defendants'
products (the "Accused Products") infringe on the '812
Patent and include all the claimed limitations
contained in Claim One of the '812 Patent. Compl.
¶¶ 12-13, 15-16. The Accused Products contain a wet
scrubbing section made up of a mouthpiece, a water
chamber, and a tubular air passage assembly. Id. ¶ 18.
In the Accused Products, liquid drips down to a ball
area and does not pass the ball, working to clean the
incoming air. Id.

## II. DISCUSSION

**A. Legal Standard**

 Claim construction of a patent, including terms of
art within claims, is exclusively within the province
of the court, not the jury. Markman v. Westview
Instruments, Inc., 517 U.S. 370, 388-89 (1996). Claim
construction usually involves resolving disputes about
the "ordinary and customary meaning" that the words of
the claim would have had "to a person of ordinary skill
in the art in question at the time of the invention."
Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.

Cir. 2005)(internal quotations and citations omitted).

Claim construction begins with an analysis of the claim language itself. <u>Interactive Gift Express, Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1331 (Fed. Cir. 2001). That is because the claims define the scope of the claimed invention. <u>Phillips</u>, 415 F.3d at 1312. But "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." <u>Id.</u> at 1313. Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis." <u>Id.</u> at 1315 (internal quotations omitted). "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." <u>Id.</u>

Courts also look to the prosecution history as part of the intrinsic evidence consulted during claim construction. See <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." <u>Phillips</u>, 415 F.3d at 1317.

Finally, in addition to the use of intrinsic evidence, courts can also rely on extrinsic evidence,

4

which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. However, extrinsic evidence is viewed "as less reliable than the patent and its prosecution history in determining how to read claim terms." Phillips, 415 F.3d at 1318.

**B.  Discussion**

The parties only dispute the construction of one claim term, "water chamber." Plaintiff argues that the Court should construe the term "water chamber" to mean "a chamber for containing liquids, such as water." Pl.'s Claim Construction Opening Br. ("Opening Br.") 2:12-14, ECF No. 39. Defendants, on the other hand, take the position that the term "water chamber" should have its plain and ordinary meaning, a chamber for containing water. Defs.' Responsive Br. 3:22-23, ECF No. 41. The parties' dispute is simple: is the "water chamber" meant to contain only water, or was it meant to contain a number of different liquids, with water being just one of these liquids?

The Court's analysis of the claim term begins with the claim language. Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1254 (Fed. Cir. 2010)("Claim construction begins and ends in all cases with the actual words of the claim." (citation and quotations omitted)). In Claim One, the claim Plaintiff asserts Defendants have infringed, the

reference to "water chamber" is as follows: "a wet scrubbing section comprising . . . a *water chamber* in fluid communication with the mouthpiece, wherein the *water chamber* provides for scrubbing of incoming airflow." '812 Patent at 5:8-12 (emphasis added). Claim One does not identify the liquid to be used in the water chamber; however, the use of the word "water" in the term "water chamber" supports a construction that the ordinary meaning of the term would be a chamber for holding *water*.

While Claim One does not articulate the liquid the patentee intended the water chamber to hold, the specification of the '812 Patent clarifies any ambiguity. The specification of the '812 Patent includes a "Detailed Description of the Preferred Embodiment" ("Preferred Embodiment"). See id. at 3:17-5:2. The Preferred Embodiment references two liquids throughout.

The first reference describes the atomizer fluid reservoir: "The atomizer fluid reservoir may have a *liquid or gel* suspended in a fibrous media that wicks to a heater for atomizing a *nicotine fluid* at an atomizer heating section." Id. at 3:26-29 (emphasis added). The vapor produced in the atomizer heating section then travels to the water chamber. Id. at 3:29-30.

The second reference is with regards to the water chamber. The Preferred Embodiment makes a number of

references to the water chamber as holding water. In discussing the water chamber's connection to the O-ring, the Preferred Embodiment states that the O-ring makes a "watertight" connection or seal with the walls of the water chamber. See id. at 3:44-46, 3:49-50, 4:3-4. The Preferred Embodiment, in describing the processing of cleaning the vapor air bubbles, states as follows: "The vapor bubbles float upward and break at the *water* level. While *underwater*, the bubbles are cleaned and cooled so that the flow of a cooled and clean vapor can continue through the tubular air passage assembly openings . . . ." Id. at 4:56-60 (emphasis added). Finally, in describing the placement of the tubular air passage assembly, the Preferred Embodiment states, "A tubular air passage assembly fits in the water chamber to provide containment for the *water*." Id. at 3:63-64 (emphasis added). This is the most enlightening reference, as it specifically discusses the liquid (i.e., water) to be used in the water chamber.

  The many references to water in relation to the water chamber throughout the Preferred Embodiment clearly support the fact that the patentee intended the water chamber to hold water. Importantly, nowhere in the '812 Patent does it state that the Preferred Embodiment was to be only one of a number of different ways the Wet Scrubbing Electronic Cigarette could be used. See Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.,

7

93 F.3d 766, 770 (Fed. Cir. 1996)(finding the teaching in the specification was "not just the preferred embodiment of the invention; it is the only one described"). In contrasting the numerous references to water when discussing the water chamber to the reference of a liquid or gel and nicotine fluid in the atomizer fluid reservoir, it is clear these different word choices were intentional.

There is nothing in the Preferred Embodiment, or the specification as a whole, to suggest that the patentee intended the water chamber to be a chamber for any liquid other than water. See Snow v. Lake Shore & M.S. Ry. Co., 121 U.S. 617, 630 (1887)(finding it was clear from the specification that there was "nothing in the context to indicate that the patentee contemplated any alternative" embodiment to the one presented). Plaintiff now asks the Court to expand the scope of the term "water chamber" to include a chamber for holding any liquid, or no liquid in particular. However, doing so would "expand the scope of the claims far beyond anything described in the specification." Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc., 554 F.3d 1010, 1018-19 (Fed. Cir. 2009). "[T]he court should focus on how [a person of ordinary skill in the art] would understand the claim term 'after reading the entire patent.'" ICU Med., Inc. v. Alaris Med. Sys., 558 F.3d 1368, 1375 (Fed. Cir. 2009)(quoting Phillips, 415 F.3d at 1321).

Plaintiff's arguments focus on the lack of language

limiting the water chamber to only hold water, but he is unable to point to any language that affirmatively suggests that the water chamber was intended to hold liquids other than water. Had Plaintiff intended the water chamber to hold other liquids, he certainly was capable of naming the water chamber "fluid chamber" or "liquid chamber." Because all references in the '812 Patent to the water chamber are references that mention water and no other liquid, the intrinsic evidence supports construing the term "water chamber" as a chamber for holding water.

Plaintiff's arguments are based almost entirely on extrinsic evidence, and the only intrinsic evidence on which he relies does not alter the construction that the '812 Patent supports. Plaintiff points to the search terms the patent examiner used when scrutinizing the '812 Patent, which included water, fluid, and liquid. Opening Br. 6:8-24. However, the patent examiner's search terms, part of the prosecution history of the patent, offer little support for Plaintiff's proposed construction of "water chamber" because the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." See Phillips, 415 F.3d at 1317 (citation omitted). Additionally, the search terms the patent examiner used are not the patentee's statement defining the term "water chamber" and thus do not explain the patentee's intent regarding

the scope of the term "water chamber." These search terms, without any further evidence or explanation, cannot support an expansion of the scope of the term "water chamber" beyond what is contained in the patent. It is telling that Plaintiff, in making his argument, was unable to provide any support or case law suggesting that a patent examiner's search terms help clarify the proper construction of a claim term.

Plaintiff's proposed construction goes up in smoke when he concedes that the '812 Patent makes no reference to a liquid other than water to be contained in the water chamber. In fact, Plaintiff is unable to point to a single section in the entire '812 Patent stating a liquid other than water could be used to accomplish the wet scrubbing function. Instead, Plaintiff relies on other patents where he alleges a person of ordinary skill in the art understood a water chamber could contain a liquid other than water.[1] See Opening Br. 7:8-20, Exs. D-F. These patents, "Adjustable Weight Toy Ball," "Dual Chamber Nursery Bottle," and "Water Filtering Bottle," are extrinsic evidence that should be given less weight than the intrinsic evidence of the '812 Patent. See Phillips,

---

[1] The "Adjustable Weight Toy Ball" is the only patent Plaintiff provides that actually uses the term "water chamber." See Opening Br., Ex. D at 5:3-4. The "Water Filtering Bottle" patent refers only to chambers, which are for holding water after the water has been filtered. See id., Ex. F. The "Dual Chamber Nursery Bottle" refers to a lower chamber that contains "a second liquid such as water." Id., Ex. E at 2:19-20.

415 F.3d at 1317.  Because Plaintiff did not create these patents, their construction of the term "water chamber," or similar terms, merits less weight than the words used in the '812 Patent.  See Acumed LLC v. Stryker Corp., 483 F.3d 800, 809 (Fed. Cir. 2007)(holding reference to other patents that used the same claim term merited little consideration because these patents were not "created by the patentee in attempting to explain and obtain the patent").

Further, Plaintiff offers this argument through his expert, David Smith, whose curriculum vitae reveals no experience with electronic cigarettes or any of the patented products that form the basis of his opinions. "A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill *in the art* at the time of the invention." Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1116 (Fed. Cir. 2004)(emphasis added).  Because Mr. Smith has no experience with any of the patents that form the basis of his opinions, he cannot be considered a person of ordinary skill in the art of these inventions.  Thus, the Court finds Mr. Smith's opinions to be of little help in determining the understanding a person of ordinary skill in the art of any of these inventions would have of the term "water chamber."  See Phillips, 415 F.3d at 1318 ("The effect of [an expert's] bias can be exacerbated if the expert is not one of skill in the relevant

art . . . .")(citation omitted).

In that same vein, the patents Plaintiff offers as support are in no way related to an electronic cigarette or the smoking industry. Therefore, what a person of ordinary skill in the art of other industries may understand "water chamber" to mean may not be the same as in the electronic cigarette industry. Accordingly, the Court finds the construction of terms contained in the other patents Plaintiff offers to be irrelevant to the construction of "water chamber" in the '812 Patent.

Ultimately, Plaintiff is grasping at thin air to broaden the meaning of "water chamber" beyond what the intrinsic evidence, most specifically the '812 Patent itself, provides. All references to the water chamber only reference it being a chamber for holding water, something with which Plaintiff agrees. The '812 Patent specifically mentions other liquids when referencing the atomizer fluid reservoir, and if Plaintiff had intended the water chamber to hold a liquid other than water, he could have included language in the '812 Patent to this effect. The intrinsic evidence supports no other construction of "water chamber" other than a chamber for holding water. Plaintiff's extraneous patents and irrelevant expert testimony do nothing but contradict the clear construction of the term the intrinsic evidence supports. See Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998)(noting

that a court should discount expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history").

### III. CONCLUSION

For the reasons set forth above, the Court **CONSTRUES** the term "water chamber" in the '812 Patent as a chamber for holding water, not other liquids.

**IT IS SO ORDERED.**

DATED: January 25, 2018   s/ RONALD S.W. LEW
                                       HONORABLE RONALD S.W. LEW
                                       Senior U.S. District Judge